| | |
|---|---|
| 1 | HOLLAND & KNIGHT LLP |
| 2 | Thomas J. Yoo (State Bar No. 175118)<br>John P. Sullivan (State Bar No. 311443) |
| 3 | 400 South Hope St., 8th Floor<br>Los Angeles, California 90071-2040 |
| 4 | Telephone (213) 896-2400<br>Facsimile (213) 896-2450 |
| 5 | thomas.yoo@hklaw.com<br>john.sullivan@hklaw.com |
| 6 | *Attorneys for Plaintiff* |
| 7 | CHESWOLD INVESTMENTS<br>(GRAPES), LLC |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHESWOLD INVESTMENTS (GRAPES), LLC, a Delaware limited liability company;<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GRAPERY, INC., a California corporation,<br><br>　　　　　Defendant. | Case No. 2:18-cv-8490<br><br>**COMPLAINT FOR:**<br>**1) BREACH OF WRITTEN CONTRACT**<br>**2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**3) UNJUST ENRICHMENT**<br>**4) CONVERSION**<br>**5) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 (UNFAIR COMPETITION)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cheswold Investments (Grapes), LLC ("Cheswold" or "Plaintiff"), by and through its counsel, alleges as follows:

## PARTIES

1. Plaintiff Cheswold is a Delaware limited liability company with its principal place of business in Pennsylvania. The members of Cheswold are Next Egg Investments (JN), LP, a Delaware limited partnership with its principal place of business in Delaware, and Next Egg Investments (Cheswold), LP, also a Delaware limited partnership with its principal place of business in Delaware. None of the partners of either Next Egg Investments (JN), LP, or Next Egg Investments (Cheswold), LP, and thus none of the members of Cheswold, is a citizen of California. Cheswold owns table grape farmland near Bakersfield, California, on which it grows and harvests specialty table grapes.

2. Defendant Grapery, Inc. ("Grapery" or "Defendant") is a California corporation, headquartered and with its principal place of business in California. Grapery provides farm management, sales, marketing and consulting services for specialty table grape growers, and grows and sells specialty table grapes for its own account.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is deemed a resident of this District under 28 U.S.C. §§ 1391(c)(2) and 1391(d), and because the parties contractually consented to the exclusive jurisdiction of any California state or federal court in Los Angeles County with respect to any action or proceeding arising out of or relating to the parties' agreement. This is such a case.

**COMMON ALLEGATIONS**

5. On January 5, 2011, and as amended on March 10, 2014, Cheswold and Grapery entered into a written contract (the "Management Agreement"), pursuant to which Grapery was engaged to manage the planting, cultivation, growing, sales, and marketing of grapes on certain portions of Cheswold's aforementioned land.

6. As payment, Grapery was to receive a flat fee for the first two years of development and cultivation, and thereafter a variable fee based on a percentage of Cheswold's net earnings from the sale of the crop ("EBIT"). With respect to the latter, specifically:

   a. Within sixty business days of the end of each harvest year, Grapery was required to submit to Cheswold an "***Earnings Statement***" setting forth the transactions, operations, and results of the grape operations on Cheswold's land, as well as other relevant information.

   b. Within forty-five business days of receiving the Earnings Statement from Grapery, Cheswold was to return to Grapery an "***EBIT Statement***" setting forth the EBIT for the harvest year covered by the Earnings Statement. EBIT is defined as the revenues received from the sale of the grapes grown during the harvest year, minus: (i) related non-capitalized expenses, (ii) any royalty fees owed for a particular variety of specialty grape, and (iii) depreciation.

   c. Within thirty business days of Grapery's receipt of the EBIT Statement (or upon any earlier agreement as to the EBIT amount), Grapery was to be paid 32% of the EBIT for the relevant harvest year.

7. The Management Agreement authorized Grapery to incur certain expenses and enter into agreements necessary for the growing, storage, and selling of Cheswold's grapes, but subject to Cheswold's approval of a detailed annual

budget and operating plan, as well as Grapery's express contractual duty to use good farming standards prevailing in the area, among other things.

8. In 2014, Grapery was unable to provide cold storage services for Cheswold's grapes, so it engaged a third party vendor to do so, at a cost to Cheswold of $1.01 per box.

9. In 2015, Grapery completed construction of its own cold storage facility. Thereafter, Grapery used its own facility for cold storage of Cheswold's grapes instead of engaging a third party cold storage provider.

10. Although Cheswold was aware that Grapery had switched to using its own cold storage facility, Cheswold never approved any new cold storage rate for the use of Grapery's facility.

***The 2015 Harvest Year: Grapery Overcharges Cheswold At Least $549,081***

11. On April 15, 2016, Grapery delivered to Cheswold the Earnings Statement for the 2015 harvest year (the "2015 Earnings Statement").

12. The 2015 Earnings Statement reflected a cold storage charge of $1.93 per box of grapes for the use of Grapery's cold storage facility.

13. $1.93 per box was unreasonable and greatly in excess of market rates available for cold storage services. According to Grapery's own cold storage analysis for the 2015 harvest year, it charged growers other than Cheswold only $1.10 per box of grapes for cold storage.

14. This overcharge of at least $0.83 per box resulted in a total overcharge of at least $549,081 in costs to Cheswold for Grapery's cold storage services for the 2015 harvest year.

15. Cheswold was not notified of the $1.93 per box rate for Grapery's cold storage services until March 30, 2016. At no point did Grapery provide Cheswold with a "schedule of related party transactions, including … cold storage rates" as required by paragraph 2(a)(xiii) of the Management Agreement. Nor did Grapery provide "information to substantiate reasonable and market rate pricing"

as required by paragraph 2(c)(i) of the Management Agreement whenever Grapery proposes to use a storage service in which it or any of its principals have an interest.

16. Cheswold never approved the $1.93 per box cold storage cost that Grapery charged for the 2015 harvest year, nor did Cheswold ever approve an annual budget or operating plan for the 2015 harvest year or any subsequent harvest year that identified a $1.93 per box cost for cold storage.

17. In the 2015 EBIT Statement, Cheswold notified Grapery that a price of $1.93 per box for cold storage was unfair and improper under the terms of the Management Agreement.

18. Grapery advised Cheswold on April 11, 2016 that the $1.93 per box cost included a "capital charge" of 8% of the cost of constructing Grapery's cold storage facility.

19. At no time did Cheswold agree to pay any such "capital charge," nor is the unilateral imposition of such a charge a commercially reasonable practice. It also appears that Grapery provided cold storage services to other growers at the $1.10 per box rate during the 2015 harvest year without any such "capital charge."

20. Cheswold owed Grapery a reconciling payment for the 2015 harvest year based on the calculation of EBIT in the 2015 EBIT Statement.

21. Grapery requested a reconciling payment of approximately $720,000, reflecting its requested cold storage cost of $1.93 per box.

22. Cheswold again notified Grapery that the $1.93 per box cold storage fee was not approved, and instead paid Grapery a reconciling payment reflecting a cold storage rate of $1.10 per box, the same rate Grapery had charged other growers for that harvest year.

*The 2016 Harvest Year: Grapery Overcharges Cheswold At Least $656,972*

23. On April 10, 2017, Grapery sent Cheswold the Earnings Statement for the 2016 harvest year (the "2016 Earnings Statement").

24.     The 2016 Earnings Statement reflected a cold storage charge of $1.98 per box for cold storage services provided by Grapery.

25.     This cold storage price of $1.98 per box Grapery charged was again unreasonable, in excess of market rates, and imposed without Cheswold's approval, authorization, or agreement.

26.     This overcharge of at least $0.88 per box, compared to the $1.10 per box rate that Grapery advised Cheswold would be charged by Grapery to other growers in 2016, resulted in a total overcharge of at least $656,972 in costs to Cheswold for Grapery's cold storage services for the 2016 harvest year.

27.     On June 9, 2017, Cheswold sent Grapery the 2016 EBIT Statement. In the 2016 EBIT Statement, Cheswold again notified Grapery that Cheswold did not agree to or approve a cold storage cost of $1.98 per box for Grapery's cold storage services.  Cheswold accordingly adjusted the cold storage cost in the 2016 EBIT Statement to $1.10 per box.

28.     As a result of adjusting the cold storage costs for the 2016 harvest year to $1.10 per box, Grapery owed Cheswold a reconciling payment of $446,741 for the 2016 harvest year.

29.     Cheswold repeatedly requested payment of the $446,741 that Grapery wrongfully withheld, or justification and substantiation for the $1.98 per box cold storage rate Grapery charged.

30.     Grapery refused to turn over Cheswold's money and failed to provide justification or substantiation for a $1.98 per box cost for its cold storage services.

***The 2017 Harvest Year:  Grapery Overcharges Cheswold At Least $618,591***

31.     On April 10, 2018, Grapery sent Cheswold the Earnings Statement for the 2017 harvest year (the "2017 Earnings Statement").

32.     The 2017 Earnings Statement reflected a cold storage charge of $1.97 per box for cold storage services provided by Grapery.

33. Again, Grapery's cold storage charge of $1.97 per box was unreasonable, in excess of market rates, and imposed without Cheswold's approval, authorization, or agreement.

34. This overcharge of at least $0.87 per box, compared to the $1.10 per box rate that Grapery advised Cheswold would be charged by Grapery to other growers in 2017, resulted in a total overcharge of at least $618,591 in costs to Cheswold for Grapery's cold storage services for the 2017 harvest year.

35. On June 7, 2018, Cheswold sent Grapery the 2017 EBIT Statement. In the 2017 EBIT Statement, Cheswold again notified Grapery that Cheswold did not agree to or approve a cold storage cost of $1.97 per box for Grapery's cold storage services. Cheswold accordingly adjusted the cold storage cost in the 2017 EBIT Statement to $1.10 per box.

36. As a result of adjusting the cold storage costs for the 2017 harvest year to $1.10 per box, Grapery owed Cheswold a reconciling payment of $420,642 for the 2017 harvest year.

37. Grapery has refused to turn over Cheswold's money and has failed to provide justification or substantiation for a $1.97 per box cost for its cold storage services.

**FIRST CAUSE OF ACTION FOR BREACH OF WRITTEN CONTRACT**

38. Cheswold incorporates and realleges all of the paragraphs above and below as if fully set forth herein.

39. Cheswold and Grapery entered into a valid written contract, namely the January 5, 2011 Management Agreement, as amended on March 10, 2014.

40. Cheswold performed all or substantially all of its obligations under the Management Agreement, if any, or those obligations have been excused. Any conditions for Grapery's performance were likewise fulfilled or excused.

41. Grapery breached the Management Agreement by, among other things, engaging in self-dealing to overcharge Cheswold for cold storage services

and/or unilaterally imposing an unauthorized "capital charge" to defray the construction costs of Grapery's own cold storage facility.  In so doing, Grapery violated at least the following terms of the Management Agreement, which are identified here solely by way of example and for ease of reference, without limitation as to other provisions of the Management Agreement that Grapery may have violated:

    a. Paragraph 2(a), which requires Grapery to employ "good farming standards prevailing in the area" in its management of Cheswold's grape operations;

    b. Paragraph 2(a)(xiii), which (i) requires Grapery to submit for Cheswold's review and approval an annual operating plan, which specifically must include a "schedule of related party transactions and related costs and expenses, including but not limited to … cold storage rates," (ii) prohibits Grapery from proceeding under any new operating plan without Cheswold's written approval, and (iii) prohibits Grapery from expending additional funds as a result of any potential variances in the annual budget without Cheswold's prior written consent;

    c. Paragraph 2(c)(i), which requires Grapery to inform Cheswold whenever Grapery proposes or intends to use storage services in which Grapery or any of its principals have an interest, including providing information to substantiate that such storage services would be priced at a reasonable and market rate;

    d. Paragraph 2(d), which requires Grapery to deposit 90% of monthly crop proceeds, less estimated payables, into Cheswold's account, and to distribute to Cheswold by March 15 of each harvest year any amount withheld in excess of amounts owed to Grapery;

    e. Paragraph 2(e)(i), which prohibits Grapery from incurring any indebtedness with respect to Cheswold's grape operations, other than trade debt in the ordinary course of business, without Cheswold's prior written consent;

    f. Paragraph 2(e)(ii), which prohibits Grapery from approving an operating plan and related expenses for an operating plan, or making any material changes to an operating plan, without Chesworld's prior written consent;

    g. Paragraph 2(e)(iv), which prohibits Grapery from making any expenditures or series of expenditures that individually or in the aggregate exceed $10,000 without Cheswold's prior written consent, except in the case of emergency or as expressly included in an approved operating plan;

    h. Paragraphs 4(a) and 4(b), which require that Grapery manage Cheswold's grape operations with at least the same level of care that Grapery employs with respect to its own crops and treat Cheswold's grape crops no differently from any other grape crops owned or sold by or on behalf of Grapery; and

    i. Schedule 1, paragraph B(1), which requires Grapery to make a representative available to discuss an Earnings Statement upon Cheswold's request.

42. In addition to Grapery's aforementioned conduct, on information and belief, Cheswold alleges that Grapery has, among other things, overcharged Cheswold for other expenses purportedly incurred in managing the planting, cultivation, sales, and marketing of Cheswold's grapes, and failed to provide information to substantiate the reasonable and market rate for such expenses charged to Cheswold.

43. As a direct, proximate, and foreseeable result of Grapery's breaches of its contractual undertakings, Cheswold has been damaged, subject to discovery and proof, and in the sum of at least $867,383.

## SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

44. Cheswold incorporates and realleges all of the paragraphs above and below as if fully set forth herein.

45. Cheswold and Grapery entered into a valid written contract, namely the January 5, 2011 Management Agreement, as amended on March 10, 2014.

46. Cheswold performed all or substantially all of its obligations under the Management Agreement, if any, or those obligations have been excused. Any conditions for Grapery's performance were likewise fulfilled or excused.

47. By, among other things, engaging in self-dealing to overcharge Cheswold for cold storage services and/or unilaterally imposing an unauthorized "capital charge" to defray the construction costs of Grapery's own cold storage facility, Grapery unfairly deprived Cheswold of its right to receive the full benefits of its contract, namely close to a million dollars in profits from the sale of Cheswold's grapes, and thereby breached the covenant of good faith and fair dealing implied by law in the Management Agreement.

48. As a direct, proximate, and foreseeable result of Grapery's breaches of the implied covenant of good faith and fair dealing, Cheswold has been damaged, subject to discovery and proof, and in the sum of at least $867,383.

## THIRD CAUSE OF ACTION FOR UNJUST ENRICHMENT

49. Cheswold incorporates and realleges all of the paragraphs above and below as if fully set forth herein.

50. By, among other things, engaging in self-dealing to overcharge Cheswold for cold storage services and/or unilaterally imposing an unauthorized "capital charge" to defray the construction costs of Grapery's own cold storage

facility, Grapery has received the benefit of close to a million dollars to which it is not entitled, as well as the benefit of having its own cold storage facility.

51. Grapery has retained those funds unjustly and at Cheswold's expense.

52. As a direct, proximate, and foreseeable result of Grapery's unjust enrichment, Cheswold has been damaged, subject to discovery and proof, and in the sum of at least $867,383.

**FOURTH CAUSE OF ACTION FOR CONVERSION**

53. Cheswold incorporates and realleges all of the paragraphs above and below as if fully set forth herein.

54. Cheswold has a right to possess the proceeds of the sale of its grapes, which Grapery received on Cheswold's behalf.

55. Grapery, among other things, intentionally and substantially interfered with Cheswold's right to receive the proceeds of the sale of its grapes by refusing to deliver them to Cheswold upon Chelswold's demand, and further, by using those proceeds to defray the construction costs of Grapery's own cold storage facility, without Cheswold's consent.

56. As a direct, proximate, and foreseeable result of Grapery's actions, Cheswold has been damaged, subject to discovery and proof, and in the sum of at least $867,383, the amount of money belonging to Cheswold that Grapery has wrongfully withheld and refuses to deliver to Cheswold.

**FIFTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 (UNFAIR COMPETITION)**

57. Cheswold incorporates and realleges all of the paragraphs above and below as if fully set forth herein.

58. By, among other things, engaging in self-dealing to overcharge Cheswold for cold storage services and/or unilaterally imposing an unauthorized "capital charge" to defray the construction costs of Grapery's own cold storage

facility, and by refusing to return the excess amounts charged, Grapery has engaged in an unlawful, unfair, or fraudulent business act or practice.

59. As a direct, proximate, and foreseeable result of Grapery's violations of California's unfair competition laws, Cheswold has been damaged, subject to discovery and proof, and in the sum of at least $867,383.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Cheswold prays for relief as follows:

1. For compensatory and/or incidental damages including, but not limited to, the amount owed in accordance with the terms of the Management Agreement, and other incidental costs and expenses in excess of the jurisdictional minimum amount of this Court and according to proof;

2. For compensatory and/or incidental damages including, but not limited to, an amount equivalent to the benefit conferred on and unjustly retained by Grapery as a result of its overcharging Cheswold and/or unilaterally imposing an unauthorized "capital charge";

3. For an order requiring Grapery to turn over to Cheswold the proceeds from the sale of Cheswold's grapes that Grapery has wrongfully withheld;

4. For reasonable attorneys' fees;

5. For interest at the legal rate;

6. For the costs of suit incurred; and

7. Such other, further or different relief as this Court may deem just and proper.


Dated:  October 2, 2018            HOLLAND & KNIGHT LLP

                                   By: */s/ Thomas J. Yoo*
                                        Thomas J. Yoo
                                        John P. Sullivan
                                        *Attorneys for Plaintiff*
                                        CHESWOLD INVESTMENTS (GRAPES), LLC